## WILLIAM M. ALBRIGHT v. ROBERT M. STEVENSON et al., Appellants.

**Division One, March 31, 1910.**

1. **ACKNOWLEDGMENT: Prima-Facie Evidence: Forgery.** By the terms of our statute (Sec. 934, R. S. 1899), the certificate of acknowledgment to a deed is only prima-facie evidence of the truth of the facts recited therein. It may be avoided by evidence *aliunde* showing the falsity of its recitals, whether the grantor was a married woman or other person. In no case is it conclusive evidence that the grantor signed the deed, and even in cases wherein the officer taking the acknowledgment was wholly disinterested the courts will go no further than to require its falsity to be shown by a clear and decided preponderance of the evidence. But that strict rule as to the force of

the certificate does not prevail in cases in which it appears that the officer taking the acknowledgment was the real beneficiary of the conveyance, is shown to have received such benefits, and is himself charged with forging both the grantor's signature and the certificate.

2. ———: ———: ———: **Presumption.** As to an officer against whom no charges of fraud, felonious conduct or bad motives are made, his certificate of acknowledgment is clothed with a presumption of correctness; but when such charges are made, such presumption cannot obtain until such charges are determined favorably to the officer. When so determined the usual presumption would follow. But where a charge of forgery is preferred against the officer, that charge becomes the vital question in the case, and the usual presumption of the correctness of the certificate will not be entertained until that question is determined.

3. **FORGERY: Deference to Chancellor.** The appellate court will defer to the finding of the trial judge, who sees the witnesses and is in a better position to determine their credibility, upon the question of whether or not plaintiff's signature to the note and deed of trust on his farm were forgeries, the issue turning in the end wholly upon oral testimony; and in this case, where plaintiff, who by defendant's witnesses is shown to possess a reputation for truth and veracity unexcelled, testified that he did not sign the note or deed of trust, and never gave in his life a mortgage on his home, which the deed of trust covered, and bankers who knew his signature and others who compared it with his signatures admitted to be genuine, testified that he signed the note, the finding of the chancellor that both instruments were forgeries is not disturbed.

Appeal from Nodaway Circuit Court.—*Hon. Wm. C. Ellison,* Judge

AFFIRMED.

*J. H. Sayler* and *Shinabargar, Blagg & Ellison* for appellants.

(1) The proof to overcome the presumption of the truth of the recitals in the notary's certificate of acknowledgment to the deed of trust must be clear and convincing beyond a reasonable doubt. 1 Am. and Eng. Ency. Law (2 Ed.), pp. 560, 561; 1 Cyc., pp. 622, 623,

624, 625; 1 Ency. L. and P., pp. 926-934; Elliott v. Sheppard, 179 Mo. 382; Swiger v. Swiger, 58 W. Va. 119; Flagles v. Tanner, 11 Ohio Cir. Dec. 172; Young v. Duvall, 109 U. S. 573; Chivington v. Colorado Springs Co., 9 Colo. 597; Brady v. Cole, 164 Ill. 116; Marden v. Dorthy, 12 App. Div. (N. Y.) 188; 42 N. Y. S. 827; 160 N. Y. 39; Warrick v. Hull, 102 Ill. 280; Jett v. Rogers, 12 Bush (Ky.) 564; Smith v. Ward, 1 Am. Dec. 80; Bank v. McCarty, 149 N. Y. 71; Springfield Co. v. Donovan, 147 Mo. 622; Comings v. Leedy, 114 Mo. 454; Barrett v. Davis, 104 Mo. 549; Pierce v. Georger, 103 Mo. 540; Mays v. Price, 95 Mo. 603; Rust v. Goff, 94 Mo. 511; Webb v. Webb, 87 Mo. 540; Drew v. Arnold, 85 Mo. 128; Belo v. Mayes, 79 Mo. 67; Clark v. Edwards, 75 Mo. 87; Steffen v. Bauer, 79 Mo. 399; Sharpe v. McPike, 62 Mo. 300; Wannell v. Kem, 57 Mo. 458, 51 Mo. 150; Brocking v. Stratt, 17 Mo. App. 304; Morrison v. McKee, 11 Mo. App. 594; Riecke v. Westenhoff, 10 Mo. App. 358; Biggers v. House-Building Co., 9 Mo. App. 210; Bohan v. Casey, 5 Mo. App. 101. (2) Plaintiff's evidence in this case falls far short of the requirements of law, and would have been insufficient had no evidence been offered on the part of defendants. (a) It consists solely of the denial of an old man, seventy-three years old at the time of trial, whose memory was faulty and whose sight was poor. The evidence to be drawn from the material facts fails to support his story. (b) Plaintiff failed to introduce any corroborative testimony of experts or persons familiar with Albright's signature. (c) The fragmentary evidence of the commission of forgery by the deceased, Haynes, on occasions prior to the transaction in question in this case, was incompetent, and should have been excluded. It cannot be considered in weighing this case. Dow's Executor v. Spenny's Executor, 29 Mo. 386; Haynes v. Christian, 30 Mo. App. 198; Vaugh v. Wilson, 31 Mo. App. 489; 5 Ency. Ev., 857; 13 Am. and Eng. Ency. Law (2 Ed.), 1106;

State v. Hopkins, 50 Vt. 316. (3) The evidence introduced by defendants fully and satisfactorily proves the genuineness of Albright's signature. (a) The demonstrative evidence furnished by a comparison of the genuine signatures of Albright with the disputed signature, may, and in this case does, have such a high probative value as to prove the authenticity of the disputed signature almost to a moral certainty. 15 Am. and Eng. Ency. Law (2 Ed.), 283; Strong v. Brewer, 17 Ala. 706; Doe v. Suckermore, 5 Ad. & El. 703. A comparison of the disputed signature with the authentic signature of Albright, by this court, on the appeal, will fully show its genuineness. This court has the right to examine the original exhibits and should do so. R. S. 1899, sec. 817; 5 Am. and Eng. Ency. Law (2 Ed.), 276; Morris v. Sargent, 18 Ia. 90; Matter of Gordon, 50 N. J. Eq. 397. (b) The fact that the signatures are not exactly alike is strong evidence tending to prove their authenticity. 15 Am. and Eng. Ency. Law (2 Ed.), 277; Howland Will Case, 4 Am. L. Rev. 625; Day v. Cole, 65 Mich. 129; Hunt v. Lawless, 7 Abb. N. Cas. (N. Y.) 113. (c) The testimony of the bank presidents was entitled to great weight, and was overwhelming and uncontradicted by any other expert testimony. 5 Ency. Ev., 534, 547; Railroad v. Finley, 38 Kan. 550; Turner v. Harr, 114 Mo. 335; Riley v. State, 44 S. W. 498; Tyler v. Todd, 36 Conn. 218; Jones v. White, 11 Humph. (Tenn.) 268; Hyde v. Woolfolk, 4 Ia. 159; 6 Ency. Ev., 403; Forgey v. Bank, 66 Ind. 123; 30 Am. Rep. 126; 15 Am. and Eng. Ency. Law, 277; 63 L. R. A. 937.

*Anthony & Ford* and *L. C. Cook* for respondent.

(1) The acknowledgment, having been certified by Tennie E. Haynes, who was financially interested in the transaction, was invalid and of no force or effect. Haynes v. Southern Assn., 124 Ala. 663; Smith

v. Clark, 100 Ia. 605; Kothe v. Krag-Reynolds, 20 Ind. App. 293; Ogden Assn. v. Mensch, 196 Ill. 554; Wilson v. Griess, 90 N. W. (Neb.) 866. (2) The notarial certificate is no proof of the facts alleged therein where the question of forgery is raised. Most certainly would this be true in this case, since the notary himself is the forger if the signatures were forged. (3) At best the certificate of acknowledgment is only prima-facie proof of the facts alleged therein. Pierce v. Georger, 103 Mo. 540; Comings v. Ludy, 114 Mo. 454. (4) The only proof of the execution of the deed and bond is the opinions of the so-called handwriting experts. The experts had made no special study of handwriting, no special preparation, and in this case made no microscopic or other scientific examination, but judged from appearance only, after comparing the signatures with others admittedly genuine. (a) This is the lowest order of evidence, and is entitled to but little credence. Cowan v. Beall, 1 McArth. 270; Matter of Foster's Will, 34 Mich. 21; Fergueson v. Hubbell, 97 N. Y. 507; Whitaker v. Parker, 42 Ia. 585; U. S. v. Pendergast, 32 Fed. 198; Maye v. Herndon, 50 Miss. 110; State v. Van Tassel, 103 Ia. 6; Hardy v. Harbin, 154 U. S. 598; Moody v. Rowell, 17 Pick. 490; Mudd v. Suckermore, 5 Ad. & El. 703; Adams v. Field, 21 Vt. 256. (b) Such proof is not sufficient to overcome the positive testimony of a witness whose credibility is unimpeached. Bell v. Norwood, 7 La. 95; Borland v. Wolwrath, 33 Ia. 130; Turner v. Hand, 3 Wall. Jr. 88; Willson's Admr. v. Kuling, 50 S. W. (Ky.) 539; Bruner v. Wade, 84 Ia. 698; Jackson v. Adams, 100 Ia. 163. (c) The opinions of experts are advisory only and may be entirely disregarded by the court. Cosnose v. Leonard, 134 Mo. 425; Johnson v. Kahn, 97 Mo. App. 631; Morrow v. Morrow, 113 Mo. App. 444. (5) After this court has examined the signatures on the bond and deed, and has compared them with the admitted signatures on exhibit, no member of

the court can say any more than the bankers who testified, than Albright himself said, than the trial court said, and plaintiff's counsel now say—"They look very much alike." This much we all say. But is that enough? Mr. Jackson testified in this connection that it is the business of a forger to make them look alike. And that is what was done in this case. While this court may examine the exhibits, yet it cannot hear the witnesses testify; cannot see them, and watch their demeanor on the stand; cannot see that unexplainable evidence of truth or falsehood in the eye. For these reasons the appellate court will defer largely to the findings of fact of the judge, and will not disturb them, unless there is a clear preponderance of the evidence against them. Bank v. Leyser, 116 Mo. 69; Taylor v. Crockett, 123 Mo. 306; Wilson v. Craig, 175 Mo. 403; Sidler v. Mfg. Co., 121 S. W. 350; Benne v. Schnecko, 100 Mo. 257; Gillespie v. Beedy, 136 Mo. App. 550.

GRAVES, J.—Plaintiff brings this action to restrain a sale under a certain alleged deed of trust, securing an alleged note or bond of $8500, upon certain lands in Nodaway county belonging to plaintiff. Plaintiff further seeks to have said deed of trust cancelled and for naught held. As grounds therefor he charges the forgery of the deed of trust, as well as the note of $8500 secured thereby, in so far as the plaintiff's name appears upon said note and upon said deed of trust. It is also averred that one Tennie E. Haynes, the principal or first signer in said note, was the agent of defendant, Robert M. Stevenson, and further that Haynes and Stevenson were partners in certain real estate matters, and further that said deed of trust and note were wholly without consideration in so far as the plaintiff was concerned.

Defendant John P. Stevenson is the trustee in such alleged deed of trust, and defendant George L. Evans is the sheriff of Nodaway county, alleged to be the

acting trustee, and threatening to foreclose the same at the direction and request of Robert M. Stevenson. By answer the said Evans admitted that he was, as sheriff, and as acting trustee, in the absence of the regular trustee, proceeding to foreclose such deed of trust at the request of the beneficiary, Robert M. Stevenson. Further answering, he disclaimed any knowledge of the facts and any personal interest in the controversy.

The two Stevensons by answer admitted the attempted foreclosure as admitted by the sheriff. They then specifically deny that said note and deed of trust were forgeries, the partnership of Robert M. Stevenson and Haynes, and further deny that Haynes was the agent of Stevenson in making the alleged loan, described by the note and deed of trust. To these specific denials was coupled a general denial.

Upon these issues the case was tried, resulting in a decree for plaintiff to the effect that he had never signed the two papers in controversy, nor authorized the same to be signed for him, and further that he received none of the proceeds thereof, and that for these reasons the sale under such deed of trust should be enjoined, and the two said instruments be cancelled, and for naught held. From such decree the defendants have appealed.

Some of the salient and undisputed facts may be thus stated: Haynes was the son-in-law of the plaintiff; Haynes signed the $8500 note as principal; Haynes lived at Skidmore, Missouri, and at the time of the loan in question was engaged in erecting a two-story brick building there; William M. Stevenson resided at Tarkio, Missouri, and was engaged in loaning money; Stevenson received the note and deed of trust in question from Haynes and paid the proceeds thereof out upon drafts from Haynes; the purported acknowledgment of plaintiff to the alleged deed of trust purported to be taken by Haynes; Haynes upon being

pressed by Stevenson concerning some business matters, committed suicide. The evidence in detail, which will be noticed in the course of the opinion, was centered upon the questions, (1) as to the relationship between Robert M. Stevenson and Haynes in a business way, and (2) the genuineness of the two instruments of writing involved in this suit. Such sufficiently outlines the case.

I. In this case the defendants first plant themselves behind the certificate of the notary to the deed of trust. They urge that to overcome the recitals of such certificate the proof must be clear and convincing beyond a reasonable doubt. A great list of cases has been assembled, but our own cases fix the views of this court upon that question and we need not go further upon the general proposition. Our statute in fact fixes the status of an acknowledgment in Missouri. What other courts may say as to the conclusiveness of an acknowledgment has no binding effect upon this court. We must take into consideration our statute. This statute reads:

"Sec. 934. Neither the certificate of the acknowledgment nor the proof of any such instrument nor the record nor the transcript of the record of such instrument, shall be conclusive, but the same may be rebutted."

This statute in its present form has been upon the books for years and long prior to the incidents of the case now under consideration. It appears that it has been largely quoted in cases where married women have attacked the certificate, but from this it will not authorize us to say that it applies to them alone. The statute is a part of our law of conveyances and applies to all persons. No one can read the chapter and say that it does not apply to all conveyances, whether the same be made by a married woman or not. The statute first appeared in an act entitled, "An act regulating

conveyances," approved February 3, 1835. [*Vide* section 37, Missouri Revised Statutes for 1835, at page 124.] It has remained in the same language from that day to this, and in the chapter wherein have been collated all the statutes pertaining to conveyances.

By the terms of this statute the certificate of acknowledgment is only prima-facie evidence of the facts recited. It is not conclusive evidence. What other States with different statutes may hold is immaterial. Decisions from such States do not enlighten us. As said in Pierce v. Georger, 103 Mo. l. c. 544, the decisions of other States do not seem to be in harmony with our cases, but as said by MACFARLANE, J., in that case, so in this, the State must be considered. On the general proposition the rule in this State is well worded by BARCLAY, J., in Barrett v. Davis, 104 Mo. l. c. 555: "In our State, in view of the obvious meaning of the statute on this subject, the courts have felt constrained to hold that such certificates may be avoided by evidence *aliunde* showing their falsity. [Mays v. Pryce, 95 Mo. 603; Pierce v. Georger, 103 Mo. 540.] That construction has been too long accepted as settled law to require re-examination now. But, in applying it, in view of the recognized presumption of correctness attaching to the acts of public officials, we are of opinion that there should be a clear and decided preponderance of evidence to warrant discarding as false any such certificate. Without reviewing the evidence in detail, it is enough to say that we find no such preponderance here."

This case by Judge BARCLAY states the rule as strongly as we find it stated in any of the cases, and in our judgment as strongly as it should be stated in view of the peculiar language of our statute. That other States have given more force to the certificate of the officer taking an acknowledgment cannot interest us in view of our statute and the holdings thereunder. So much for the general principle urged by defendants.

The cases announcing this general principle are not cases wherein the acknowledging officer was in any way interested, nor in which that officer was charged with a forgery. We can see where the rule should be given its full force when the the acknowledging officer is wholly disinterested, and charged with no dereliction of duty upon his own account. But in cases where it appears that the officer purporting to take the acknowledgment is the real beneficiary of the conveyance, and that he is shown to have received such benefits, and he himself is charged with forgery, as well as a false certificate, we hardly think the strict rule as to the force of a certificate from such an officer should prevail. In such case the first and foremost question to be determined is the forgery. It will not do to say that where a notary has forged a note and deed of trust, and to the latter made a false certificate, the certificate bespeaks the truth of its recitals, and thereby bind the person whose name has been forged. So that in our judgment where there is a charge of forgery and this act is chargeable to the acknowledging officer, the broad rule of the case law, even as such rule stands in this State, is not applicable. We therefore conclude that under the showing made by the record in this case the defendants cannot rely solely upon this certificate. Even if the rule in its broadest sense were invoked, the circumstances in the case, coupled with the emphatic denial of plaintiff to the effect that he had never signed or acknowledged the instrument, would be sufficient to overturn the simple prima-facie case made by the certificate. But we go further and say that whilst it is true, that as to an officer against whom no charges of fraud, felonious conduct or bad motives are imputed, his acts are clothed by the law with the presumption of correctness, yet when such charges are made, such presumption cannot obtain until the charges are determined favorably to the officer. When so determined the usual pre-

sumption would follow. So in this case the charge of forgery having been preferred, and as against the public official, such question becomes the vital question in the case, and we will not entertain the usual presumption, until such question has been determined. This brings us to the vital question in the present controversy and of it we express our views in the succeeding paragraph.

II.   Proceeding now to what we deem the real issue in this case, were these two instruments forgeries? The trial court has so said. This requires a short review of the evidence. Haynes had been making loans at Skidmore, Missouri, for R. M. Stevenson for years, and receiving commissions from Stevenson for such loans. The loans were numerous. Plaintiff was the father-in-law of Haynes and possessed of this world's goods in an amount from $25,000 to $30,000. Haynes was building in Skidmore and plaintiff had signed a note with him for $3500. Later Haynes got him to sign a $5000 note, on which Haynes was to secure the signature of his brother. This note, last mentioned, had never been heard of up to the date of the trial of this cause. Whether Haynes failed to get the signature of the brother, or without it floated the note, does not appear. Plaintiff, after the death of Haynes paid the $3500 note, which was to have been paid out of the $5000. This $5000 note was not secured by mortgage or deed of trust. In January, 1904, Haynes's office was burned and with it his papers. About two days before March 4, 1904, the defendant Robert Stevenson called Haynes up over the telephone and charged him with some irregularities as to certain deeds upon another loan made to Haynes personally. Within an hour and a half after this incident Haynes was dead. He died before Stevenson could get from Tarkio to Skidmore, a distance of forty miles. The trial judge was scrupulously cautious about admitting

evidence, but from the fragments in the record, it is apparent that Haynes had not been straight with Stevenson, and ended his life before Stevenson could reach him in person. This after the telephone message aforesaid. Going to the incidents of the trial, plaintiff emphatically denied the signing of the bond and coupons, as well as the deed of trust securing them. He put in evidence all the surrounding circumstances, so far as permitted by a cautious trial court.

The defendant introduced the two instruments of writing, and then introduced three instruments of writing admittedly plaintiff's signature. He then placed upon the stand some three bankers who had known plaintiff for years, as had the defendant Robert M. Stevenson himself. These parties testified as such parties usually testify in cases of this character. In their judgment the signature to the bond and deed of trust was that of the plaintiff, but that there was no sure test. They were bankers with no better experience as experts upon handwriting than bankers usually have. They had at times been deceived in signatures, and only stated in their judgment these signatures were those of the plaintiff.

We have above stated that each of these witnesses had known the plaintiff for years, and we now add that they each give him a reputation for truth and veracity excelled by no man in the State. Such was the character of the oral evidence.

By consent, counsel have filed with us the original exhibits used in the trial, that we may compare the signatures as did the court, *nisi*. This we have done, with the limited experience we possess. With it all we can only say what the bankers at the trial said, the signatures are similar in appearance. The forger attempts to have them so appear. Our judgment upon this matter alone ought not to either defeat or establish plaintiff's claim. There are other matters in the case. Plaintiff and all these witnesses appeared before

the chancellor below.  He had opportunity to look into their faces and gather from them impressions which we cannot do.  He heard the testimony of the witnesses as to plaintiff's good character, coming as it did from defendant and his witnesses.  He could look the old gentleman in his face.  He could hear the sound of his voice and see the expressions upon his face when he said that he never signed a mortgage or deed of trust on his farm.  He saw and heard the witnesses who testified to the surrounding circumstances, and in his judgment a forgery had been committed.

It is true that equity cases are in effect tried *de novo* here.  It is also true that we are not bound by the findings of fact, *nisi,* but unless otherwise constrained by the record, we usually yield to the findings of fact so made because of the better position of the judge below to determine the credibility of witnesses.  In this case upon the question of forgery or no forgery there was presented evidence, much of which was oral.  This was weighed by the chancellor and forgery found.  We are not disposed to gainsay this finding upon the record of this case.

Such being true we leave undiscussed the further intricate question as to whether or not Haynes was the agent of Stevenson.  It is clear that Haynes never turned the proceeds of the loan to plaintiff.  The funds were appropriated by Haynes.  But inasmuch as we have concluded not to disturb the finding, *nisi,* upon the question of forgery, we shall not discuss this further question.

From what has been said, it follows the judgment should be and is affirmed.  All concur.