CHARLES W. DICKEY, Trustee in Bankruptcy, v. W. C. THOMPSON ET AL., Appellants.—18 S. W. (2d) 388.

Division One, June 7, 1929.

108

*G. Purd Hayes, Tom R. Moore* and *Moore & Moore* for appellants.

*Page, Barrett & Barrett* and *Lon S. Haymes* for respondent.

110

LINDSAY, C.—This suit was brought to cancel two deeds of conveyance of real estate alleged to have been executed for the purpose of defrauding the creditors of John T. Rhodes and Clora H. Rhodes, who are husband and wife. The plaintiff is trustee of the estate in bankruptcy of John T. Rhodes and also trustee of the estate of Clora H. Rhodes. John T. Rhodes and Clora H. Rhodes were severally adjudged bankrupts upon their petitions in voluntary bankruptcy, separately filed. The adjudications in bankruptcy were had on October 17, 1924. The deeds sought to be cancelled by the trustee were executed more than four months prior to the filing of the petitions in bankruptcy. The petition herein alleges that on or about the 28th day of March, 1924, John T. Rhodes and Clora H. Rhodes were the owners in fee simple of eighty acres of land in Christian County —the northwest quarter of the northeast quarter and the northeast

quarter of the northeast quarter of Section 31, Township 27, Range 22; and that on said date, and while hopelessly insolvent and greatly indebted, and with the purpose of hindering, delaying and defrauding their creditors, they pretended to sell and convey the tract of land described, to the defendant W. C. Thompson, by warranty deed, for the recited and pretended consideration of $2,000; that thereafter, about the ―― day of April, 1924, said W. C. Thompson attempted to convey said real estate to defendant C. C. Rhodes, minor son of John T. Rhodes and Clora H. Rhodes, and executed a deed to C. C. Rhodes, which was not delivered or recorded, and is held by John T. Rhodes. The petition charges that there was no consideration whatever paid for the execution of the deeds mentioned; that W. C. Thompson and C. C. Rhodes knew that John T. Rhodes and Clora H. Rhodes were insolvent and greatly indebted, and participated in the intent and purpose of defrauding the creditors of John T. Rhodes and Clora H. Rhodes.

The evidence shows that John T. Rhodes and Clora H. Rhodes on the 28th day of March, 1924, executed a warranty deed to defendant W. C. Thompson for the recited consideration of $2,000. This deed was not acknowledged by them at that time, but was delivered to said Thompson, who kept it for a few days and returned it to the grantors. Afterward, this deed was acknowledged by the grantors and filed for record on the 16th day of October, 1924. The deed executed by Thompson to defendant C. C. Rhodes some eight or ten days after the execution of the deed to Thompson, was acknowledged by Thompson, but was never filed for record. The respective schedules filed by John T. Rhodes and Clora H. Rhodes in the bankruptcy proceedings, were introduced in evidence, showing various creditors holders of claims existing long prior to the dates of the deeds mentioned, and continuing to the time of the adjudication in bankruptcy. These claims consist mainly of notes signed by John T. Rhodes as maker, and by Clora H. Rhodes as surety, in the aggregate, in excess of $1600.

The schedule of John T. Rhodes shows him as having no property other than household goods and wearing apparel valued at $25. The schedule of Clora H. Rhodes shows the only property owned by her was wearing apparel valued at $25 and a life estate, valued at $300, in forty acres of land. The trial court entered a decree annulling the deeds mentioned, and barring defendants Thompson and C. C. Rhodes from setting up any claim to the land mentioned by virtue of said deeds, and decreed plaintiff as trustee to be the owner thereof.

As their first point, counsel for appellants say there is neither allegation nor proof that any claims were allowed against the estates of

112

John T. Rhodes and Clora H. Rhodes, and that in the absence of proof that claims had been established against the estates of the bankrupts, the trustee is not entitled to maintain his suit and set aside the alleged fraudulent conveyances, for the purpose of obtaining funds with which to pay claims. The petition alleges that the said ''bankrupts had listed in their schedules large sums owed by them to numerous creditors therein named, and who were such at the time of said conveyance, and had not listed assets sufficient for the payment of such creditors; and, that the creditors listed in said bankruptcy proceedings will be prejudiced or defeated unless said conveyance be set aside.''

It is true that there is no express allegation that claims had been allowed, nor direct evidence of the allowance of claims. However, the verified schedule of each of said bankrupts was admitted in evidence without objection. Therein were set forth the items of indebtedness, and the names of creditors, showing that the debts so due were contracted before the making of the conveyance sought to be set aside. In Riggs v. Price, 277 Mo. 333, it was held by Court en Banc, that a trustee suing to set aside a conveyance made to defraud creditors, is not required to aver or show that some creditor has reduced his claim against the bankrupt to judgment; and it was further held that it was not necessary to set forth the names of the several simple contract creditors, or the amount due each. The trustee in cases of this character, ''as to all property not in the custody of the bankruptcy court shall be deemed vested with all rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied.'' [Sec. 47a, Bankruptcy Act; U. S. C. A. Title 11, Sec. 75; Riggs v. Price, supra.]

The question here raised was directly passed upon by the Circuit Court of Appeals for the Eighth Circuit in Gering v. Leyda, 186 Fed. 110. It was there contended that the petition of the trustee failed to state a cause of action because it was not averred therein that at the time of the commencement of the action, the claims of any creditors had been proved and allowed against the estate of the bankrupt. The court said, l. c. 112:

''In our opinion it was not necessary for the trustee to allege and prove that claims of creditors had been filed and allowed against the estate of the bankrupt prior to the commencement of the suit.''

The suit there was one to set aside a preference. The petition alleged, as does this one, that the bankrupt was ''hopelessly insolvent,'' and stated the amount of his indebtedness, and that the only unexempt property was a stock of merchandise held by the alleged preferred creditor. After that, the court said, l. c. 113:

"It is not necessary in such a case for the trustee to plead and prove that claims against the bankrupt have been filed and allowed."

In this case the bankrupts in their voluntary applications listed the debts, and there was no question raised as to claims of creditors so listed, nor was there any dispute as to the insolvency of John T. Rhodes and Clora H. Rhodes at the time of the transfer. John T. Rhodes testified that at the time of the transfer he had no other property than the land included in the deed to Thompson.

In the petition it is alleged that after the adjudications that John T. Rhodes and Clora H. Rhodes were bankrupts the first meeting of the creditors of the bankrupts was duly held at the office of the referee in bankruptcy, and that at such meeting the plaintiff was duly appointed trustee. The record evidence introduced shows the creditors at said meeting fixed the amount of bond to .be given by the plaintiff as trustee of the estate of John T. Rhodes, and also the amount of bond to be given by him as trustee of the estate of Clora H. Rhodes. This should be considered in connection with certain provisions of the Bankruptcy Act. Section 55b of the Act (Sec. 91b, U. S. C. A.) provides:

"At the first meeting of creditors the judge or referee shall preside, and, before proceeding with the other business, may allow or disallow the claims of creditors there presented."

Section 56a of the Act (Sec. 92a, U. S. C. A.) provides:

"Creditors shall pass on matters submitted to them at the meetings by a majority vote in number and amount of claims of all creditors whose claims have been allowed and are present, except as otherwise provided in this title."

Subdivision b of the same section has the provision of limitation of right to vote of creditors in respect to their secured claims. The claims listed in the schedules of John T. Rhodes and Clora H. Rhodes are listed as unsecured claims and therefore are claims of persons entitled to vote at the creditors' meetings. The record evidence also shows that subsequent to the meetings of creditors an order of record was made by the referee directing the trustee to bring suit to set aside the deed heretofore mentioned. Undoubtedly, if no claims are ever allowed against the estate of a bankrupt, there is no one legally constituted for whose benefit the trustee may maintain an action to set aside a fraudulent transfer. But, the existence in this case of claims proved or provable against the estate of the bankrupts cannot be doubted. The answer of defendants recognizes this. In their answer they denied there was any intention on their part to hinder and delay the creditors of John T. Rhodes and Clora H. Rhodes, and averred that the deed was made to defendant C. C. Rhodes to prevent the land from being sold by the creditors of the

bankrupts, and thereby to take the land of C. C. Rhodes to pay the debts of John T. Rhodes and Clora H. Rhodes. Under the facts in the record, and in view of the provisions of the Bankruptcy Act and the authorities referred to, we overrule the contention of appellants, which in effect. is, that plaintiff made no case because there was failure of proof that any claims had been allowed against the estates of the bankrupts.

Another contention of appellants is founded upon the claim that there is no evidence that the transfer of the land was in fraud of creditors; but, that it was in effect the payment of an indebtedness due from John T. Rhodes and Clora H. Rhodes to their minor son, defendant C. C. Rhodes, and was no more than a preference; and, that since the preference was effectuated more than four months before the filing of the petitions in bankruptcy, the trustee may not set it aside. The only oral testimony in the case was given by John T. Rhodes and defendant W. C. Thompson. John T. Rhodes testified that in the year 1912 a gift of money was made for the benefit of C. C. Rhodes, then a boy three years of age; that this was given by Dick Frazier, father of Clora H. Rhodes. John T. Rhodes said that Frazier "advanced money to me and my wife for the boy and for his benefit; about $690 or $695 was turned over to me for the boy and his benefit in September, 1912." He further testified that he had used the money in making various trades and purchases of property, and had traded the property in which he originally invested the money, four times. Upon that ground it is insisted that the transfer was valid under the law of the State, and being executed more than four months before the filing of the petitions in bankruptcy it is not voidable. Counsel for appellants concede that a trustee in bankruptcy taking title to property fraudulently conveyed may avoid such a conveyance as the creditors might have avoided. This may be done although the fraudulent transfer was made more than four months before the filing of the petition in bankruptcy. [Riggs v. Price, 227 Mo. 333; May v. Gibler, 319 Mo. 672, 4 S. W. (2d) 769; Stellwagen v. Clum, 245 U. S. 615.]

It is necessary to notice the testimony of Thompson and John T. Rhodes concerning the circumstances under which the deed to Thompson was executed, and also the circumstances concerning the deed from Thompson to C. C. Rhodes. Thompson testified that at the time the deed to him was signed, he put up a check for $225 with John T. Rhodes; that the check stayed up about a week or ten days, and said: "He asked me to make it to his boy, and returned the check;" that nothing in the way of payment for the land passed from him to Rhodes and he did not receive anything for the con-

veyance to the boy, C. C. Rhodes. He further testified that the deed was delivered to him some time in March. Asked about the fact that it was not acknowledged at that time he said: "I thought it was by some justice of the peace over at Clever." Asked if he discovered that the deed had never been acknowledged he made no answer. He said: "I had the deed in my possession; there is lots of places to keep it. . . . I kept it in my private papers. I had it a week or ten days." He testified also that when he made the deed "back to the boy" he gave back to Rhodes the deed from Rhodes to himself; that John T. Rhodes arranged to have the deed made to him, and then the deed made from him to the boy, and that about a week after Rhodes brought his deed he came back. Continuing, Thompson said: "and there was a mortgage on it and there had been a fire and he couldn't settle." It appears from the testimony that the fire had destroyed some building on the property in question, and Thompson's explanation was that Rhodes "couldn't settle the fire insurance and couldn't convey the property" to him, because there was a mortgage on the place; and finding that the insurance was not to be settled so the mortgage could be discharged, Rhodes could not perfect title to the land, and on that account the deal did not go through. Asked about this on further examination he said the fire had happened in November, 1923, the year before he bought the property: "The building had burned but the insurance hadn't been settled." He further said: "He" (Rhodes) "didn't know he couldn't collect the insurance when I bought the property. Me and him found it out and that is the reason I deeded it back to the boy."

John T. Rhodes testified that he was selling the land to pay the boy. He said: "The boy had some money in the land and I was selling the land to pay the boy. We had the fire in October or November, 1923, and had a little trouble collecting the insurance and I hadn't still collected at the time I sold it to Thompson. I thought I was going to sell it in a day or two." It appears from the testimony farther on, that the insurance was paid, and that the mortgage against the land was paid off when the insurance was paid. John T. Rhodes further testified that the money that he said came from Frazier to the boy did not come to his wife "as an heir under the will, although she did get some money after the old man, her father, died." He testified: "This money was supposed to be the boy's—I was not his guardian, never did have any, the old man told me what to do—I claim I was keeping this money for the boy."

The record in this case, as shown by the printed abstract before us, is in an unsatisfactory condition. A large part of the oral testimony is given in narrative form, and no little of it in such manner

that it is obscure in meaning. Counsel for appellants in their statement say the deed from Thompson to C. C. Rhodes made in April, 1924, was recorded more than four months before the filing of the petitions in bankruptcy. Counsel for respondents, in their brief, contradict that statement, and call attention to the record, as shown in the abstract, which contains statements of the admission made by the parties in open court, in the early part of the trial, that Thompson executed a deed to C. C. Rhodes for the land in suit for a recited consideration of $2,000 and that said deed "was properly acknowledged, but was never recorded." John T. Rhodes, in his testimony, set forth in the abstract in narrative form, refers to the destruction of a deed or deeds. The manner of statement is confusing. The narrative is as follows:

"The deed Thompson made to the boy and the deed we made to Thompson, I have got it, I ain't certain, didn't bring it with me, the deed Thompson made to the boy, Mitt Hall tore it up, last term of court. My father was one of the creditors of my estate and my wife's estate.

"After this case was continued last term of court, I turned this deed over to Mitt Hall—turned it over to him for safekeeping and learned he tore it up. It was all right to tear this deed up I gave him, gave him the deed to hold, and I couldn't get my witnesses, I told him to tear it up, I made them a deed to hold to this term of court on account of not being able to get my witnesses.

"Q. Why was this deed torn up? A. We were going to get these deeds set aside and get them back in my name, and I told them to tear this up and I would hold this deed until it was set aside. They was the only ones making it.

"Q. And they agreed you couldn't do that? A. Until this was set aside in court.

"Q. And Mitt Hall tore the deed up? A. This was supposed to come up the last term of court, and I couldn't get any witnesses here, and we tore up my deed made to the boy."

Immediately after the foregoing, upon redirect examination, John T. Rhodes testifies as follows:

"The deed made from Thompson was never delivered to the boy—I always did the boy's business, was the only one that ever had it, that was the reason I tore it up, it was in my possession, and left in my power to deliver."

We have heretofore given enough of the testimony of John T. Rhodes as to the asserted gift of money by Frazier to C. C. Rhodes. Thompson in his testimony said that he bargained for the land in good faith, and the reason why the transaction did not go through was that John T. Rhodes and Clora H. Rhodes could not convey

title to him, and his explanation was that there was a failure to pay the insurance, and thereby inability on their part to pay the mortgage on the land so they could convey title to him. The statements of Thompson and of John T. Rhodes are to be considered in connection with all of their testimony and with the circumstances shown.

The trial court found that the deed from John T. Rhodes and Clora H. Rhodes to defendant Thompson, and the deed from Thompson to C. C. Rhodes, were made without any consideration whatever, and were made with intent to defraud the creditors of John T. Rhodes and Clora H. Rhodes. We think the evidence abundantly sustains the finding of the trial court. The statement of John T. Rhodes is that in 1912, thirteen years before the trial, Frazier, grandfather of the boy, turned over $690 or $695 for the benefit of this boy; but, no guardianship was instituted or trust created for the preservation of the money, and John T. Rhodes says he used it in making trades and purchasing property. Yet, according to his testimony, after the death of Frazier in 1916, it was Clora H. Rhodes who received property from the estate of Frazier under his will. The trial court could reasonably conclude that the advancement, if made in 1912, was made to Clora H. Rhodes. Concededly, John T. Rhodes and Clora H. Rhodes were both insolvent and indebted in a considerable amount in March, 1924, and that indebtedness continued and still exists. The reasonable conclusion from all the circumstances is that the transaction—the making of the deed to Thompson and making by him of the deed to C. C. Rhodes—was without consideration, and was in fraud of the rights of the creditors. At the time of this transaction C. C. Rhodes was a minor, fifteen years of age. The idea that he was familiar with the financial affairs of his father and mother, and participated with them in a design of hindering, delaying and defrauding their creditors, may be laid aside. There is no testimony as to any act of his or as to any knowledge on his part of the transaction. John T. Rhodes testified that the eighty acres conveyed was of the value of $2250. If it should be conceded that John T. Rhodes and Clora H. Rhodes received $690 for the benefit of C. C. Rhodes that was an inadequate consideration for the conveyance.

The plaintiff's right of action rests upon the claim that the transfer or attempted transfer of the land was without consideration, and with intent to defraud the creditors of the bankrupts; and, upon certain provisions of the Bankruptcy Act, Sections 47 and 70, respectively Sections 75 and 110, U. S. Code (Bankruptcy). By Section 110, U. S. C., the trustee, except as to property which is exempt, is vested by operation of law with the title of the bankrupt as of the date of the adjudication, to "property transferred by him

in fraud of creditors,'' and by Subdivision ''e'' of that section, ''the trustee may avoid any transfer by the .bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona-fide holder for value prior to the date of the adjudication.'' There is no claim of exemption in the property involved. By Section 75, U. S. C. A., the trustee ''as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied.''

The defense set up in the answer of defendants in substance is, that C. C. Rhodes was a bona-fide owner for value before the adjudication. Proceeding upon the premise that the deed to Thompson and the deed to C. C. Rhodes were made without any consideration, a discussion applicable here is found in the case of May v. Gibler, 319 Mo. 672, 4 S. W. (2d) 769. That was a suit by a trustee in bankruptcy to set aside a deed made by a father to his imbecile son, held to be a voluntary conveyance, and fraudulent and void as to creditors. In the opinion it was said, l. c. 677:

''There are two rules of construing the effect of a voluntary conveyance on the rights of attacking creditors. One is that such a conveyance must be conclusively presumed to be fraudulent; the other is, that the mere fact that a conveyance is voluntary raises a presumption of fraud which may be rebutted; and in determining the validity of the conveyance, the amount of the grantor's debts, the total value of his property and the value of that conveyed, are to be considered, and if it appears that he has retained property sufficient to pay all of his debts the conveyance will not be held invalid. There was evidence, aside from his exemptions as to personalty, that he had but a nominal amount of property after the transfer of his land. The inventory, made one year thereafter, when he voluntarily petitioned to become a bankrupt, showed that the total value of all of his possessions was $64. Failing to rebut the presumption under the second rule stated, it becomes conclusive. The authorities under the first stated rule will be found in 27 C. J. p. 547, sec. 247, and note 69; and those under the second rule in the same volume, page 548, sec. 248, note 73. Another rule of construction may be invoked as supplemental to the conclusiveness of the presumption of fraud, to this effect: that however meritorious a conveyance may otherwise be, if it includes all of a debtor's property and leaves him without the means to pay existing debts at the time of conveyance, it is fraudulent and void. [Citizens' Bank of Hayti v. McElvain, 280 Mo. 505, 219 S. W. 75; Barrett v. Foote

(Mo. Sup.), 187 S. W. 67; Needles v. Ford, 167 Mo. 495, 67 S. W. 240; Snyder v. Free, 114 Mo. 360, 21 S. W. 847, and cases cited in 27 C. J. 550, sec. 249, and note 76.]''

In the case at bar John T. Rhodes testified: ''At the time I and my wife made these deeds it left me no property, and left her no property except a life estate in forty acres of land.'' The value of this life estate was placed at $300. Indebtedness existing at that time and still existing against them is in excess of $1600.

The contention of appellants upon the point under consideration is overruled.

There is another contention of appellants to be considered. Counsel say that plaintiff failed to show that the land conveyed was subject to the claims of creditors, by failing to show whether the same was held by John T. Rhodes individually, or Clora H. Rhodes individually, or by John T. Rhodes and Clora H. Rhodes as tenants by the entirety, or tenants in common; and, further, that the evidence failed to show the title was such that her creditors or his creditors could levy upon the land under a separate judgment against each party; and that in default of such showing plaintiff cannot prevail.

John T. Rhodes testified that of the eighty acres in controversy one forty was purchased from one person and the other forty from another. He was asked by counsel for appellants whether the land conveyed to Thompson stood in his name or in his wife's name or in their names jointly. He answered: ''One was made to me and one was made jointly.''

''Q. Which forty do you remember? A. I don't remember.

''Q. The northeast northeast? A. Yes, sir.''

The deeds were not offered in evidence. The foregoing testimony went in without objection, and both parties contented themselves with that extent and manner of proof.

Counsel for appellants argue that the trustee can have no greater rights than a creditor; that the adjudications in bankruptcy were separate and being so the trustee can have no greater right than a creditor as a result of his proceeding to judgment and execution separately against the husband, and separately against the wife. This is put upon the theory that one forty-acre tract of the land was held by John T. Rhodes and Clora H. Rhodes as tenants by the entirety. Counsel urge that this trustee stands in the same position with respect to the creditors, as if the creditors had gone into the state court, and in one action obtained judgment against John T. Rhodes, and the same creditors had also gone into the state court and in another action obtained judgment against Clora H. Rhodes, and by executions respectively issued, had undertaken to sell severally

the interests of each individual in the land. Attention is called to Brewing Co. v. Saxy, 273 Mo. 159, and Ashbaugh v. Ashbaugh, 273 Mo. 353.

The nature of an estate held by husband and wife as tenants by the entirety under the laws of this State, is considered in those cases. Under the rule there laid down, during the joint lives of the husband and wife, neither has an interest in the land held by them as tenants by the entirety, which can be sold under execution for his or her sole debt. The rule is sought to be applied here on the ground that the husband and wife were adjudged bankrupts upon separate petitions. However, the evidence shows that the husband and wife had the same debts; that the debts were their joint obligations. After the adjudication in bankruptcy, their creditors, common to both, could not obtain judgments upon the notes listed in the respective schedules. It has been generally held that an estate by the entirety is subject to execution on a judgment against husband and wife for the same obligation. In 30 Corpus Juris, 573, the following is laid down as a general rule:

"A judgment against both husband and wife is a general lien on the interest of both in the property held by them as tenants by the entirety, and the property may be sold under execution issued on the judgment." There is citation of many cases to that effect in the annotated report of Martin v. Lewis, 35 A. L. R. 144 (187 N. C. 473). It is held as a rule that when one of two tenants by the entirety goes into bankruptcy the estate by the entirety does not pass to the trustee in bankruptcy. Clearly, under the rule announced in Brewing Co. v. Saxy, supra, and Ashbaugh v. Ashbaugh, supra, neither of the two tenants by the entirety had a separate estate therein which could be subjected to execution for an individual debt. In this case each of the tenants is adjudged bankrupt, in a separate proceeding, but on the same day. The debts forming the basis of the adjudication are not the sold debts of either, but are joint obligations.

But, the plaintiff in this case occupies the position of trustee of John T. Rhodes individually, and trustee of Clora H. Rhodes individually. If there is an estate held by them by the entirety it is distinct from the estate of either as an individual. In the separate proceedings in bankruptcy, a debt for which both are liable would nevertheless have to be allowed against the estate of John T. Rhodes severally, and the same debt allowed against the estate of Clora H. Rhodes severally. In neither proceeding can there be a joint allowance against both estates. If the husband and wife hold one portion of the land as tenants by the entirety, in reference to that land, they constitute an entity which is not in bankruptcy by virtue

of these several adjudications, and no claim could be allowed against the entity. The fact that one person, the plaintiff, is trustee in bankruptcy of John T. Rhodes, and is also trustee in bankruptcy in the estate of Clora H. Rhodes, does not make him trustee of the estate held by them as tenants by the entirety. We do not find that the precise question here presented has been passed upon, but it has been held in a number of cases that where all the members of a firm are adjudged bankrupts, but there has been no adjudication against the firm as such, the trustee appointed in the individual cases has no authority to reclaim or interfere with the assets of the firm, notwithstanding that all the cases were instituted at the same time, by the same creditors, and the same trustee was appointed for all the partners. [In re Mercur, 122 Fed. 384, 58 C. C. A. 472; Oldmixon v. Severance, 119 App. Div. 821, 104 N. Y. Supp. 1042; American Steel & Wire Co. v. Coover, 27 Okla. 131, 30 L. R. A. (N. S.) 787.] The question of misjoinder was not raised in this proceeding, but, even so, we cannot see how the plaintiff as a trustee appointed in the individual cases, and in each as necessarily representing a debt individually allowed, can be held to have authority to reclaim or interfere with property held by the individual bankrupts as tenants by the entirety. We think this is true because the entity holding the property is not in bankruptcy. We have heretofore set forth the testimony constituting all the evidence there was as to how title to the land in controversy was held. The statement of John T. Rhodes that the deed to one forty of the land was "made jointly" does not conclusively show that he and Clora H. Rhodes were tenants by the entirety under that deed, nor does his statement show conclusively that it was the deed to the northeast quarter of the northeast quarter which was made jointly. If one forty of the land was held by the two bankrupts as tenants by the entirety we think the creditors holding their joint obligations were not without a remedy; but, upon the several adjudications, having under the state law the right to subject this property to the joint obligations, the creditors upon proper application to the Federal court would have been permitted to take judgments upon their debts, and enforce those judgments upon property held by the entireties, as property not subject to action by the trustee in his capacity as trustee of each of the several estates. Such a right is available, if enforced before the discharge of the bankrupts. Their discharge in bankruptcy would discharge liability for the debts. The grounds of this right are set forth in the opinion of the Kansas City Court of Appeals in the recently decided case of Wharton v. Citizens' Bank, 15 S. W. (2d) 860. It is our conclusion that the judgment of the trial court was correct as to any portion of the land in suit

held by John T. Rhodes; but, as to the other portion, if it was held by the bankrupts as tenants by the entirety, we think the plaintiff was without authority to reclaim and interfere with it.

In view of the indefinite character of the evidence as to whether it was a tenancy by the entirety, and if so, as to which portion of the land is so held, we reverse the judgment and remand the cause for further proceedings. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. *Atwood, Gantt* and *Frank, JJ.,* concur; *Ragland, J.,* concurs in the result.