In re Joseph Michael THOMAS and Myrtle Anne Thomas, Debtors.

In re Peter A. Bunker and Michelina P. Bonanno, Debtors.

In re William Gordon Prather and Ethel Fern Prather, Debtors.

Nos. 00–80673–RGM, 00–80792–RGM, 00–11473–RGM.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

March 29, 2001.

Klinette H. Kindred, Law Office of Robert Weed, Alexandria, VA, for Joseph Michael Thomas, Myrtle Anne Thomas, Peter A. Bunker and Michelina P. Bonanno.

H. Bradley Evans, Jr., Redmond, Peyton & Braswell, LLP, Alexandria, VA, for Gordon P. Peyton, Trustee in Bankruptcy of Joseph Michael Thomas and Myrtle Anne Thomas.

Gordon P. Peyton, Redmond, Peyton & Braswell, LLP, Alexandria, VA, Trustee in Bankruptcy of Peter A. Bunker and Michelina P. Bonanno.

Steven B. Ramsdell, Tyler Bartl Burke & Albert, PLC, Alexandria, VA, for William Gordon Prather and Ethel Fern Prather.

Jack I. Frankel, Office of the United States Trustee, Alexandria, VA.

## MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

The three cases before the court address the exemption and administration of real property held by joint debtors as tenants by the entireties. In each case, the debtors are married, own their home as tenants by the entireties with the common-law right of survivorship and filed voluntary joint petitions in bankruptcy.[1] Thomas and Bunker are chapter 7 cases. Prather is a chapter 11 case.

### The Thomas Case

The Thomas' scheduled their home on Schedule A. They state that it is owned by them as tenants by the entireties, has a current market value of $227,000 and is subject to a lien in the amount of $7,600. They scheduled unsecured claims in the amount of $80,296 and claimed all of their assets exempt. They assert that their home is fully exempt pursuant to § 522(b)(2)(B) of the Bankruptcy Code.[2] Schedule F, which lists the unsecured nonpriority creditors, reflects that each creditor is a creditor of only one of the debtors. No joint unsecured creditor is listed. All joint debts, except the mortgage, were paid in full prior to the filing of the petition.[3] The trustee has moved to substantively consolidate the two estates.

### The Bunker Case

The Bunkers also scheduled their home. They state that it is owned by them as tenants by the entireties, has a current market value of $215,300 and is subject to two liens totaling $134,212, a first trust with a balance of $105,742 and a second trust with a balance of $28,469. Only the husband claimed the property exempt, asserting an exemption of $75,000 pursuant to § 522(b)(2)(B) of the Bankruptcy Code. His wife, Ms. Bonanno, did not claim her interest in the real property exempt.

1. Virginia opted out of the federal exemptions pursuant to the authority granted in 11 U.S.C. § 522(b)(1). Va.Code Ann. § 34–3.1 (Michie 2000). The exemption is claimed under 11 U.S.C. § 522(b)(2)(B).

2. They also claimed the entireties property exempt pursuant to the Virginia Homestead Statute, Va.Code Ann. § 34–4 (Michie 2000), in the amount of $1.00 each. The Homestead Exemption is available to the extent of $5,000 each and to the extent not otherwise exhausted.

3. All joint debts were paid with the help of their children. However, the amount and timing of the payments is unknown. The debtors' response to Question 3 on their Statement of Financial Affairs reflects only mortgage payments and car payments made within 90 days prior to filing the petition. Only payments aggregating $600 to a creditor are required to be disclosed.

They scheduled 15 unsecured creditors with claims totaling $48,896. All of the claims are identified as either claims of the husband or of the wife. None is identified as a joint claim.

### The Prather Case

The Prathers, who also scheduled their home, state that it is owned by them as tenants by the entireties, has a current market value of $340,000 and is subject to two liens totaling $221,833, a first trust with a balance of $167,834 and a second trust with a balance of $53,999. They claim the house exempt pursuant to § 34–4 of the Code of Virginia in the amount of $1.00.[4] They scheduled 16 unsecured creditors, 11 of which are identified as the husband's creditors and five as joint creditors. The claims of the husband's unsecured creditors total $74,198. The claims of the joint creditors total $44,857.[5] The Prathers' chapter 11 plan proposes separate classes for the joint creditors (Class 5) and the husband's individual creditors (Class 6). The joint creditors are to be paid from the proceeds of the sale of the house. To the extent that the Class 5 joint claims are not paid in full from the sale of the house, the balance of their claims will be paid as part of the Class 6 individual unsecured claims. The Class 6 claims are to be paid, to the extent of funds available, from the proceeds of an accounting suit now pending in state court. It is expected that the Class 5 claims will be paid in full and that there will be a $20,000 surplus from the sale of the house. The plan provides that the surplus will be retained by the debtors. It is expected that the Class 6 claims will be compromised.

### Exemption of Tenants by the Entireties Property in Joint Cases [6]

A debtor's interest in tenants by the entireties property is property of the bankruptcy estate. In re Ford, 3 B.R. 559, 570 (Bankr.D.Md., 1980), aff'd sub nom. Greenblatt v. Ford, 638 F.2d 14, 15 (4th Cir., 1981). See also Sumy v. Schlossberg, 777 F.2d 921, 924 (4th Cir., 1985); Liberty State Bank and Trust v. Grosslight (In re Grosslight), 757 F.2d 773, 775 (6th Cir., 1985); Napotnik v. Equibank and Parkvale Sav. Ass'n, 679 F.2d 316, 318 (3rd Cir., 1982).[7] While Ford was an

4. The plan provides that the Homestead Exemption will be applied to a vehicle and the first $7,500 from either the sale of the house or a state court suit recovery.

5. One of the husband's creditors is scheduled as contingent, unliquidated and disputed in an "unknown" amount.

6. This case does not address other exemptions that may be available to claim the entireties property exempt. For example, the Virginia Homestead Exemption, § 34–4 of the Code of Virginia, may be available. The Thomas' claimed the property exempt pursuant to the tenants by the entireties exemption and their Homestead Exemptions. To the extent that the property is claimed exempt pursuant to § 34–4, the claim of exemption ($1.00 each), will be allowed. The Prathers claimed only $1.00 exempt pursuant to § 34–4. Since they have exhausted their Homestead Exemption on other property, their claim of exemption in the amount of $1.00 will also be allowed. Since the Prathers claimed no other exemption, the discussion with respect to the tenants by the entireties exemption is not applicable to them. The issue affecting them is the administration of non-exempt tenants by the entireties property.

7. The procedural treatment of exemptions under the Bankruptcy Code is fundamentally different from the treatment under the Bankruptcy Act although the result is frequently the same. Under the Act, exempt property never became property of the bankruptcy estate. Lockwood v. Exchange Bank. 190 U.S. 294, 299–300, 23 S.Ct. 751, 753, 47 L.Ed. 1061 (1903). Under the Code, property that may be claimed exempt first becomes part of the estate and is then exempted out of the estate. 11 U.S.C. §§ 522(l) and 541. See Greenblatt, 638 F.2d at 15. This change was

individual case, the principle is equally applicable in joint cases.

A joint petition does nothing more than simultaneously commence two individual cases. The Bankruptcy Code permits spouses to commence a joint case by filing a single petition, but does not require it. 11 U.S.C. § 302(a).[8] Either spouse may file separately without the other ever filing. They may file sequential petitions. They may even file two separate petitions at the same time. In each instance, including the filing of a joint petition, two separate bankruptcy estates—the husband's and the wife's—are created. A joint petition more readily permits the two estates to be administered by one trustee, but, unless substantively consolidated, does not affect the legal rights or obligations of the debtors, the creditors or the trustee. *Reider v. FDIC (In re Reider)*, 31 F.3d 1102, 1109 (11th Cir., 1994); *In re Olien*, 256 B.R. 280, 283 (Bankr.E.D.Tenn., 2000); *In re McKenzie Energy Corp.*, 228 B.R. 854, 874 (Bankr.S.D.Tex., 1998); *In re McCulley*, 150 B.R. 358, 360 (Bankr. M.D.Pa., 1993); *Matter of Stuart*, 31 B.R. 18, 19 (Bankr.D.Conn., 1983); 2 Collier on Bankruptcy ¶ 302.01[1], at 302–3 (15th ed. rev., 2000). A joint petition is a mere procedural convenience for the debtors, creditors and trustee. Consequently, each debtor's interest in tenants by the entireties property becomes property of that debtor's bankruptcy estate. 11 U.S.C. § 541. The debtors are divested of all interest in the property. While each bank-

ruptcy estate holds only its debtor's interest, the two bankruptcy estates between them possess the entire fee simple interest, holding it, as between the two bankruptcy estates, as tenants by the entireties. *See Fairfield v. United States (In re Ballard)*, 65 F.3d 367, 372 (4th Cir., 1995) ("[T]he commencement of a joint bankruptcy case does not disrupt a debtor's co-ownership of property as a tenant by the entireties."); *Ford*, 3 B.R. at 571 ("[T]he tenancy by the entirety is not severed by the filing of a petition under the Code.") This is neither more nor less than the position that the spouses were in prior to filing their joint petition. Pre-petition, each spouse had an interest in the property and between them possessed the entire fee simple interest.

A debtor may, to the extent permitted by applicable law, exempt property from the bankruptcy estate. 11 U.S.C. § 522(b). The Thomas' and Bunkers assert that each spouse is entitled to claim his or her interest in their homes exempt from his or her own estate under 11 U.S.C. § 522(b)(2)(B) because the property is held by each debtor as a tenant by the entirety. They posit that since each spouse is entitled to assert his or her exemptions independently of the other spouse, each must be able to exempt his or her interest from the bankruptcy estate. 11 U.S.C. § 522(m). The result, because both spouses exempted the entireties property from each estate, is that the entireties property

---

deliberate. *See* S.Rep. No. 95–989, at 82–83 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5868; H.R.Rep. No. 95–595, at 367–68 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6324.

**8.** The Bankruptcy Act of 1898, ch. 541, 30 Stat. 544 (repealed 1978) did not provide for joint petitions. Both husband and wife were required to file separate petitions, schedules, and statements of affairs. The Bankruptcy

Code of 1978 expressly changed this situation, recognizing that in consumer cases there were frequently joint debts and jointly held assets. "A joint case will facilitate consolidation of their estates, to the benefit of both the debtors and their creditors, because the cost of administration will be reduced, and there will be only one filing fee." S.Rep. No. 95–989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5818; H.R.Rep. No. 95–595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6277.

is wholly exempt.[9] The debtors are relieved from the burden of their debts but retain the benefit of their entireties property.[10]

■■■ There is significant authority that in an individual case where a debtor's spouse does not file a petition, just such a result would obtain. *Maryland Hotel Supply Co. v. Seats (In re Seats)*, 537 F.2d 1176, 1178 n. 1 (4th Cir., 1976); *Reid v. Richardson*, 304 F.2d 351, 353 (4th Cir., 1962); *Phillips v. Krakower*, 46 F.2d 764, 765 (4th Cir., 1931); *Ford*, 3 B.R. at 576. This derives from 11 U.S.C. § 522(b)(2)(B), which permits the tenants by the entireties exemption. The exemption allowed under § 522(b)(2)(B), however, is limited. It is available only to the "extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(2)(B). In Virginia, one tenant by the entirety cannot convey, encumber, or otherwise dispose of any part of the entireties property without the joinder of the spouse. *Hausman v. Hausman*, 233 Va. 1, 3, 353 S.E.2d 710, 711 (1987); *Drake v. Livesay*, 231 Va. 117, 121, 341 S.E.2d 186, 188 (1986); *Vasilion v. Vasilion*, 192 Va.

735, 740, 66 S.E.2d 599, 602 (1951). A judgment creditor of only one tenant by the entirety cannot obtain a lien on property owned as tenants by the entireties.[11] Consequently, since the entireties property is immune from the claim of a non-joint creditor, it is exempt from the bankruptcy estate only as to non-joint creditors in an individual case. It is not exempt as to joint creditors. *Williams v. Peyton (In re Williams)*, 104 F.3d 688, 690 (4th Cir., 1997); *Sumy*, 777 F.2d at 924–25.

■■■ The three cases before the court are joint cases, not individual cases. Just as a husband and wife have the ability to jointly transfer, encumber and sell entireties property, the trustee,[12] as successor to each debtor's individual interest, may also exercise the rights that the debtors could have exercised, including rights that the debtors could only exercise jointly. Therein lies the difference between a joint filing and one individual filing. If only one spouse files bankruptcy, the trustee succeeds only to that spouse's rights. The trustee of one spouse alone has no greater right to sell the debtor's interest than the debtor had before he filed his petition.[13] But where both spouses are before the

---

9. The Thomas' quote two sentences from *In re Giles*, 222 B.R. 766, 769 (Bankr.D.Md., 1998) for support. The brief passage merely illustrates the unlimited nature of the exemption allowed in entireties property as to individual creditors. It does not advance the Thomas' argument. *Giles* was a joint case. The parties owned real property as tenants by the entireties. Mr. Giles sought to avoid seven judicial liens arising from judgments against only himself. The relief was denied because the individual judgments did not result in a lien against the entireties property.

10. This argument is not applicable to the Bunkers. Ms. Bonanno did not claim the property exempt, only her husband claimed it exempt. Debtors are permitted to claim exemptions, but are not required to do so. If property is not claimed exempt, it will be

administered by the trustee. *Sumy*, 777 F.2d at 923–24.

11. Joint tenancies by parties other than spouses are different. A creditor of one joint tenant can obtain a lien on the joint tenant's interest and force the partition of the property. *Jones v. Conwell*, 227 Va. 176, 183, 314 S.E.2d 61, 66 (1984); *Price v. Simpson*, 182 Va. 530, 534, 29 S.E.2d 394, 395 (1944).

12. Generally, the same individual is appointed trustee in a joint case. If there were two separate petitions, there could be two different trustees. Whether there is one trustee for both estates or two separate trustees is irrelevant.

13. This assumes, of course, that the debtor asserted the tenants by the entireties exemption. If the debtor did not—Ms. Bonanno

court at the same time, the trustee on behalf of each estate (or the two trustees if the filings were not a joint petition) may jointly sell the property. The trustee or trustees possess in the two estates the entire ownership of the property and may, just as the spouses could before bankruptcy, unite the two interests in the execution of a single deed and thereby convey the property to a third party.[14] The trustee or trustees may sever the estate just as the debtors could have prior to bankruptcy. If one joint debtor dies during the administration of the estates and the tenancy has not been severed, the entire fee will vest in the bankruptcy estate of the survivor. *Ballard,* 65 F.3d at 371–72.[15]

■■■ Additionally, in a joint case, the trustee has all of the rights of a hypothetical lien creditor under 11 U.S.C. § 544. Entireties property is not exempt as to joint creditors. *Williams,* 104 F.3d at 690; *Sumy,* 777 F.2d at 928. The trustee has all the rights of a judgment lien creditor of each debtor. *Ragsdale v. Genesco, Inc. (In re Ragsdale),* 9 B.R. 991, 993 (Bankr. E.D.Va., 1981), *aff'd,* 674 F.2d 277, 279 (4th Cir., 1982); *In re Utz,* 7 F.Supp. 612, 612–13 (D.Md., 1934); *In re Carpenter,* 5 F.Supp. 101, 102 (M.D.Pa., 1933).

This is the same result as under the Bankruptcy Act.[16] In *Carpenter,* both the husband and wife filed separate petitions in bankruptcy on the same day. Art S. Burt was appointed chapter 7 trustee in each case and sought to sell real property held by the debtors as tenants by the

---

and the Prathers did not—the trustee (or debtor-in-possession in a chapter 11 case) has the authority to sell the debtor's interest under 11 U.S.C. § 363(h), subject to the conditions set forth therein.

**14.** "The estate by entireties might be terminated at common law by the *joint deed* of husband and wife conveying the share of either or the shares of both, it becoming a tenancy in common with the grantee in the first instance and a tenancy of the grantee in severalty in the second, but neither consort could at common law by his or her *sole* act convey his or her share so as to destroy the consorts' right of survivorship upon the death of the one who makes such conveyance." 2 Minor on Real Property § 856 (F. Ribble 2d ed., 1928)(emphasis in original.)

**15.** This assumes that the debtor's interest is property of the estate at the time of the spouse's death. *In re Birney,* 200 F.3d 225, 229 (4th Cir., 1999) addressed the application of § 541(a)(5) after entireties property ceased to be property of the estate. The debtor properly claimed entireties property exempt under § 522(b)(2)(B). No objection to the claimed exemption was made and the property ceased to be property of the estate upon the expiration of the objection period. 11 U.S.C. § 522(1); F.R.Bankr.P. 4003(b). The non-filing spouse died within 180 days after the

debtor filed bankruptcy and after the entireties property ceased to be property of the estate. The court of appeals held that the entireties property had ceased to be property of the estate upon expiration of the period for objection to claims of exemptions and did not become property of the bankruptcy estate under § 541(a)(5) because the debtor merely succeeded to the ownership of the entire fee simple interest in the property. He did not acquire it by bequest, devise or inheritance. If there had been no claim of exemption, the estate would have succeeded to fee simple ownership by virtue of its right of survivorship, not by virtue of § 541(a)(5).

**16.** The court of appeals quoted approvingly from a law review article, Craig, "An Analysis of Estates by the Entirety in Bankruptcy," 48 Am. Bankr.L.J. 255, 283 (1974), analyzing Bankruptcy Act cases which stated, "[I]f the spouses' proceedings are consolidated, the rule is uniform that the trustee will take the entirety property." The court added, "This practice is authorized and continues under the Code." *Sumy,* 777 F.2d at 925. *See also Chippenham Hosp., Inc. v. Bondurant (In re Bondurant),* 716 F.2d 1057, 1059 (4th Cir., 1983) ("The equities on which the cases under the previous Bankruptcy Act [of 1898] were decided remain unchanged and the reasoning of *Krakower* is just as persuasive today as it was before the 1978 Act.")

entireties. The debtors argued, as do the debtors before this court, that the real property was not property of the bankruptcy estates and could not be sold for the individual debts of either debtor. While there were at least two joint debts, it appears that there were also individual debts. *Carpenter*, 5 F.Supp. at 101. The district court adopted the referee's written opinion. In distinguishing *Carpenter* from other cases cited by the debtors, the referee noted that the other cases involved only one petition by one spouse. The referee stated:

> [T]his case is different here—not the wife alone or the husband, but both husband and wife are bankrupt. In all the cases cited, only one party has been bankrupt, so far as we are able to discover. Nowhere is there a parallel case cited like the one at bar. I am of the opinion it is futile to argue that the property of both parties (even though adjudged separately and severally) does not pass to the trustee, if it can be sold by virtue of judicial process or voluntarily conveyed by both which the Act of Congress makes the law. Then, the husband and wife, being regarded as one in law and having a community of interest, separate adjudication does not separate joint property, nor sever a community of interest and the interest of both is placed in the court for the benefit of creditors. The trustee takes all the property of both the bankrupts under section 70a(5) of the Bankruptcy Act, and, as such, it passes to and is vested in the trustee.

*Id.* at 102.

*Utz* is a district court opinion affirming a referee's order setting aside as a preference a judgment lien obtained by a joint creditor nine days before the debtor and his wife filed simultaneous petitions in bankruptcy. *Utz*, 7 F.Supp. at 612. The

district court discussed *Krakower* and its holding that entireties property does not become property of the bankruptcy estate upon the filing of a petition in bankruptcy of only one spouse. *Utz*, 7 F.Supp. at 612. It held that "the property of the husband and wife in the present consolidated proceeding, held by them as tenants by the entireties, does pass to the trustee in bankruptcy." *Id.* at 613. Consequently, the judgment lien was a preference and was avoided. There was no discussion as to the nature of the claims in the case, that is, whether the other claims were joint or individual. Similarly, in *In re Pennell*, 15 F.Supp. 743, 744 (W.D.Pa., 1935), the district court held that "[W]hen the estate of the husband and wife came into court on separate adjudications in bankruptcy, the trustee takes the estate held by them by entireties."

■ The exemption permitted by 11 U.S.C. § 522(b)(2)(B) is limited. Just as it is not effective against joint creditors in an individual case, it is not effective against the trustee in a joint case. The trustee stands in their shoes. The trustee has all the rights that the debtors had pre-petition, including the right to jointly transfer the property or sever the estate. The entireties property is not exempt and the trustee may administer it.

### Administration of Entireties Property

Holding that property held by joint debtors as tenants by the entireties becomes property of the estate and cannot be exempted under § 522(b)(2)(B) does not resolve how the trustee may administer that property. The chapter 7 debtors' principal argument in these cases, and one with which the chapter 11 debtors agree, is that the chapter 7 trustee can only administer the entireties property for the benefit of joint creditors. They conclude that since there are no joint creditors scheduled

in the Thomas or Bunker cases, the chapter 7 trustee cannot administer the entireties property and, therefore, the debtors retain it. 11 U.S.C. § 554(c). In Prather, the chapter 11 case, the joint creditors are proposed to be paid from the entireties property with the surplus going to the debtors, not the individual creditors.

The Thomas' and Bunkers base their argument that the trustee may not administer the entireties property on *Sumy* and on the statement contained in the last half of the last sentence of the last paragraph in *Reid*. *Reid* states:

> Since the re-opening of Thomas Reid's estate and its consolidation was proper, all outstanding present interests in the entireties property were in the custodia legis of the Bankruptcy Court. All such interests vest in the Trustee. Thus, he may convey the full quantum of the estate. Therefore, the entireties property is an asset of the consolidated estate *and may be sold to satisfy the claims of all creditors holding joint obligations of the bankrupts.* Roberts v. Henry V. Dick & Co., Inc., 275 F.2d 943 (4 Cir.1960). (Emphasis added.)

*Reid*, 304 F.2d at 355. *Reid*, however, must be read in the context in which it arose and in light of the limited relief requested.

The context is a familiar factual scenario. A married couple owns their home as tenants by the entireties. In order to avoid losing the home to the trustee if they were to file a joint petition, one spouse files a petition in bankruptcy. Since the home is held as tenants by the entireties, it is exempt and the debtor receives a discharge. This is followed by variations on the theme. One variation involves joint creditors. Before bankruptcy, the joint creditors had full recourse to the entireties property. After the bankruptcy of the first spouse, they are left with recourse only against the second spouse and are thus unable to obtain a joint judgment that would result in a lien on the entireties property. If the second spouse is otherwise judgment proof, a second petition in bankruptcy is unnecessary. Alternatively, whether there are joint creditors or not, the second spouse also files bankruptcy, hoping to achieve the same result—a discharge of debts while retaining the entireties property. The first variation revolves around joint creditors, the second around carefully timed sequential filings. In both instances, the debtors seek the benefits of bankruptcy without accepting the concomitant burdens.

The Court of Appeals for the Fourth Circuit has consistently prevented debtors from achieving this untoward result. *Williams,* 104 F.3d at 690; *Sumy,* 777 F.2d at 932; *Sovran Bank, N.A. v. Anderson,* 743 F.2d 223, 224–25 (4th Cir., 1984); *Bondurant,* 716 F.2d at 1058–59; *Ragsdale,* 674 F.2d at 278–79; *Seats,* 537 F.2d at 1178–79; *Davison v. Virginia Nat'l Bank,* 493 F.2d 1220, 1221–22 (4th Cir., 1974); *Krakower,* 46 F.2d at 765. Each of these cases was initially a filing by one spouse only. The court of appeals recognized that careful orchestration by the debtors of the filing of sequential individual petitions could produce a legal fraud, that is, the debtors could accomplish indirectly that which they could not accomplish directly. In *Krakower,* Mrs. Krakower held a joint claim against both Mr. and Mrs. Phillips. Mr. and Mrs. Phillips owned real property in Maryland as tenants by the entireties. Only Mr. Phillips filed bankruptcy. The creditor, Mrs. Krakower, objected. Prior to bankruptcy, she could have obtained a joint judgment against the debtor and his spouse and docketed it among the land records. It would have become a judgment lien against the entireties property, and while

the underlying debt would have been discharged as to Mr. Phillips, the judgment lien against the real property would have survived bankruptcy and she could have realized on the lien at a later date. *Krakower*, 46 F.2d at 765. However, since only Mr. Phillips filed bankruptcy, the real property did not become property of the bankruptcy estate, and after Mr. Phillips received his discharge, Mrs. Krakower would not be able to obtain a joint judgment. She would have been left with an unsecured judgment against Mrs. Phillips. *Id.* The court of appeals found this to be a legal fraud. The remedy was to stay the issuance of the discharge, permit Mrs. Krakower to sue both Mr. and Mrs. Phillips in state court and, if successful, docket the joint judgment so as to obtain a lien against the real estate. *Id.* at 766. Only then would Mr. Phillips be granted a discharge.

*Reid* is a variation on this theme. There were two joint creditors, the United States and William F. Ward. Neither sought a stay of the granting of Mr. Reid's discharge. He received his discharge and his case was closed. Mrs. Reid then filed bankruptcy. Since she was the only one liable on the debt at the time of her bankruptcy—her husband had just been discharged from liability on the debt—the strict *Krakower* remedy was ineffective. Even if Mrs. Reid's discharge were stayed, the United States could only sue her because Mr. Reid had been discharged. The United States filed a motion to re-open Mr. Reid's case. The motion was granted and Mr. and Mrs. Reid's estates were consolidated "for the sole purpose of permitting the enforcement in the Bankruptcy Court of the joint claims against the entireties property." *Reid*, 304 F.2d at 353.

The order consolidating the two cases for this limited purpose also directed the chapter 7 trustee to sell the property.[17] These were the only orders appealed. The Fourth Circuit found that the Reids—just as had the debtor in *Krakower*—sought to circumvent the bankruptcy laws to accomplish indirectly that which they could not have accomplished directly. The remedy was to re-open Mr. Reid's bankruptcy. The trustee could then administer the entireties property. Both estates were open simultaneously. "[A]ll outstanding present interests in the entireties property were in the custodia legis of the Bankruptcy Court" and the trustee, therefore, had the power to "convey the full quantum of the estate." *Id.* at 355.

The facts of *Reid* and the specific relief requested also vitiate the debtors' reliance on *Reid*. No one in *Reid* requested that the entireties property be administered for individual creditors. The question was not raised, addressed or decided. While the quotation relied on by the debtors in these cases is an accurate statement of the result and holding in *Reid*, nothing beyond that ruling may be inferred because no additional relief was requested. All requested relief was granted. *See Sumy*, 777 F.2d at 927 (In discussing the relief requested in *Chippenham*, the court stated, "The [joint] creditor in that case specifically requested lifting of the stay, and our affirmance of that relief says nothing about what other avenues of relief may be available for joint creditors to satisfy their claims.")

Delving further, one may surmise that the court of appeals in *Reid* would have allowed the trustee to sell the entireties property even for the benefit of individual debtors if the relief had been requested. The court's statement that the trustee held

---

**17.** This presaged the rule in *Sumy* under the Bankruptcy Code. Under *Sumy*, a chapter 7 trustee does not need to wait for the sequen-tial filing by the debtor's spouse in order to administer entireties property for the benefit of joint creditors.

the "full quantum of the estate" suggests no limitation on the trustee's ability to administer the entireties property. This is especially compelling when the principal case cited by the court for the statement, *Roberts,* and the three district court cases upon which *Roberts* relies, are examined. All allowed entireties property to be administered for the benefit of all creditors, not only joint creditors. *Reid,* 304 F.2d at 355.

Prior to *Roberts, Shipman v. Fitzpatrick,* 350 Mo. 118, 164 S.W.2d 912 (1942) and *Dickey v. Thompson,* 323 Mo. 107, 120–22, 18 S.W.2d 388, 393–94 (1929), held that in "separate proceedings which are later consolidated, the trustee is not entitled to property held by the bankrupts as tenants by the entirety." *Roberts,* 275 F.2d at 944. This is exactly the result that the debtors in these cases seek. However, *Roberts,* noting the scholarly criticism of *Shipman* and *Dickey,* rejected them and held that three district court cases, *Pennell, Utz,* and *Carpenter,* correctly stated the law: where both husband and wife simultaneously file petitions in bankruptcy, entireties property becomes property of the bankruptcy estates.

*Roberts* is a straightforward discharge case. The debtors, husband and wife who simultaneously filed separate petitions, owned several parcels of real estate as tenants by the entireties and had conveyed them within one year prior to the filing of their petitions. *Roberts,* 275 F.2d at 944. The record on appeal was not sufficient to determine whether there were any joint creditors at the time the properties were conveyed. If there were, the conveyances were fraudulent as to them and the discharges would be denied. However, if there were no joint creditors, then the conveyances were not fraudulent because none of the individual creditors could have reached the properties in any event. In

this event, the discharges should be granted. *Id.* at 945. *See Oliver v. Givens,* 204 Va. 123, 127, 129 S.E.2d 661, 663–64 (1963). It is tempting to read into the *Roberts* opinion that the resolution of the fraudulent conveyance question turned on whether the entireties property became property of the bankruptcy estate and that this turned on the existence of joint creditors. This temptation should be resisted. A fraudulent conveyance need not be made with property that would otherwise have been property of the estate. The gravamen of the objection to discharge is the debtor's misconduct in engaging in an action, before the creation of the estate, that hinders, delays or defrauds a creditor. If there were no joint creditors who could have reached the property before bankruptcy, then the debtors' actions did not hinder, delay or defraud anyone. This is true under the present Bankruptcy Code and its predecessor, the Bankruptcy Act. *See* 11 U.S.C. § 727(a)(2); Bankruptcy Act of 1898, § 14c(4). It does not turn on whether the fraudulently transferred property would have been property of the estate.

The last clause in the last sentence of *Reid* does not offer the debtors in these cases any support. The issue these debtors present was not presented in *Reid* and *Reid* itself rejected the proposition of *Shipman* and *Dickey* that entireties property could not be administered by a trustee where simultaneous petitions were pending.

The debtors also base their argument that entireties property may only be administered for the benefit of joint creditors on *Sumy.* This proposition is true in the context of *Sumy,* that is, where only one debtor is before the bankruptcy court. But, as in *Reid,* the court of appeals in *Sumy* was not faced with the issue presented by these cases. While the facts of

*Sumy* fully support the remedy given to the chapter 7 trustee, the case is not support for the debtors' position here. *Sumy* merely continues the long line of cases originating with *Krakower* that are designed to prevent and remedy a particular type of abuse—creating an exemption in bankruptcy that does not exist at state law by manipulating the filing of petitions in bankruptcy by the spouses.[18] It was intended to prevent an abuse, not create a new one. Neither *Reid* nor *Sumy* support the debtors' proposition that administration of entireties property is limited to joint creditors.[19]

### Substantive Consolidation

 The manner in which the cases are administered—that is, whether they are administratively consolidated or substantively consolidated—may be important to both the debtors and to the creditors. There is a difference between administrative consolidation and substantive consolidation. Administrative consolidation, or joint administration, is justified on the grounds of convenience and efficiency. 2 Collier on Bankruptcy ¶ 302.06, at 302–17 (15th ed. rev., 2000). Joint administration permits a trustee to administer two cases together, however, the individual estates remain legally distinct entities. The rights of the debtors, the creditors and the trustee are not altered. *In re Blair*, 226 B.R. 502, 505 (Bankr.D.Me., 1998); *McCulley*, 150 B.R. at 360. When a trustee pays allowed claims, creditors of each estate may receive different dividends. This arises from two factors: the assets recovered in each estate and the allowed claims in each case. Some creditors will be creditors of only one estate while others may be joint creditors. Some assets liquidated by the trustee may have belonged to one debtor alone. Other assets may have been joint assets. This may result in two estates with different amounts of money available for distribution to creditors holding different claims, claims different as to amount and priority. While all creditors of the same class in each estate will receive the same pro rata distribution, usually creditors of the two estates will receive a different percentage payment of their claims.

 Substantive consolidation is different. When two or more estates are substantively consolidated, they become one estate. Creditors' rights, especially distributions, may be altered. All creditors of the same class will receive the same percentage payment of their claims.

 Factors taken into account in deciding to substantively consolidate two estates are more than mere convenience and efficiency of administration. The criteria for substantive consolidation with corporate debtors is fairly well established. *In re Peramco Int'l, Inc.*, 242 B.R. 313, 317 n. 5 (E.D.Va., 2000), *rev'd on other grounds*, 2001 WL 101463 (4th Cir., Feb. 7, 2001)(unpublished opinion); *In re Bonham*, 229 F.3d 750, 765–66 (9th Cir., 2000);

18. The *Sumy* remedy is more in keeping with the Bankruptcy Code when there is more than one joint creditor. *Krakower* necessarily results in a race to the courthouse among the joint creditors. *Sumy* eliminates the race and assures all joint creditors, large and small, of equal treatment.

19. Craig, in his law review article quoted by the court of appeals in *Sumy*, concludes, "The general rule may be stated as follows: when both spouses are in bankruptcy and the proceedings are consolidated, the trustee will take the entire interest in any property held by the entirety and may sell it for the benefit of all creditors." 48 Am. Bankr.L.J. at 267. *See also In re Hallenbeck*, 211 F.Supp. 604 (W.D.Va., 1962), *rev'd on other grounds sub nom. Hallenbeck v. Penn Mutual Life Ins. Co.*, 323 F.2d 566 (4th Cir., 1963).

*Union Savings Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.)*, 860 F.2d 515, 518 (2nd Cir., 1988); *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp., Inc.)*, 810 F.2d 270, 276–77 (D.C.Cir., 1987); *Stone v. Eacho (In re Tip Top Tailors, Inc.)*, 127 F.2d 284, 289–90 (4th Cir., 1942), *reh'g denied*, 128 F.2d 16, *cert. denied*, 317 U.S. 635, 63 S.Ct. 54, 87 L.Ed. 512 (1942). There are two basic tests. The first is whether the debtors had so intermingled their financial affairs that it is difficult to unravel them or is unfair to creditors to treat them as separate estates. The second test is the prejudice to the creditors if the estates are consolidated. While there will usually be some prejudice to some creditors when two estates are substantively consolidated,[20] the extent of the prejudice must be balanced against the benefit to all creditors. The balance is an equitable balance. There are fewer reported cases in which substantive consolidation is sought where spouses filed joint petitions. *Reider*, 31 F.3d at 1104; *In re Chan*, 113 B.R. 427, 428 (N.D.Ill., 1990); *In re Birch*, 72 B.R. 103, 104–05 (Bankr.D.N.H., 1987). Substantive consolidation was certainly envisioned by Congress in joint cases. Section 302(b), which provides for joint cases, also provides that "the court shall determine the extent, if any, to which the debtors' estates shall be consolidated." The House report states:

> Subsection (b) requires the court to determine the extent, if any, to which the estates of the two debtors will be consolidated; that is, assets and liabilities combined in a single pool to pay creditors. Factors that will be relevant in the court's determination include the extent of jointly held property and the

amount of jointly-owned debts. The section, of course, is not license to consolidate in order to avoid other provisions of the title to the detriment of either the debtors or their creditors. It is designed mainly for ease of administration.

S.Rep. No. 95–989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5818; H.R.Rep. No. 95–595, at 321 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6278. The considerations for substantive consolidation of the two estates created by a joint petition are similar to those in the corporate context with the added factor of ease of administration.

If two cases are administratively, but not substantively, consolidated the trustee will account for all assets and pay all claims in the same manner as if the two cases were totally separate entities. Assets of each estate will be liquidated and the allowed claims of each estate paid from the proceeds from the liquidation of the assets of that estate. A joint creditor of both estates is entitled to file a claim in each estate and be paid a dividend from each estate. Of course, a joint creditor is entitled to only one satisfaction. It is possible that the allowed claims in one estate may be significantly less than the second estate. They may be paid in full with a surplus remaining. That surplus is returned to the debtor, not paid to the creditors of the second estate even though they may not have been paid in full. 11 U.S.C. § 726(a)(6).

If two cases are substantively consolidated, there is only one estate. All assets are liquidated and all creditors are paid from the single fund. No funds are re-

---

**20.** If creditors in both estates would be treated exactly the same if the estates were substantively consolidated as if they were not substantively consolidated, the issue of substantive consolidation would be moot. While this is mathematically possible, in practice it is highly unlikely.

turned to the debtors unless all creditors have been paid in full. A joint creditor is entitled to file only one proof of claim in the consolidated case. *Ballard*, 65 F.3d at 372; 2 Collier on Bankruptcy ¶ 105.09[3], at 105–103 (15th ed. rev., 1998)

 In the case of entireties property in two cases that are only administratively consolidated, the proceeds from the sale of the entireties property may be divided in half, one-half going to each estate. Just as the spouses could have sold the property before filing bankruptcy and split the proceeds or could have severed the estate, so too may the trustee or trustees of the two estates. They are exercising no greater rights than the debtors themselves had. If the two estates were substantively consolidated, there would be only one estate, which would consist of the entire proceeds from the sale of the entireties property, and all creditors, joint and individual, would share in the distribution on a pro rata basis. If the entireties estate is neither severed nor the bankruptcy estates substantively consolidated, the trustee may be limited to administering the entireties property solely for the benefit of the joint creditors.[21]

*Reider*, *Chan* and *Birch* specifically address substantive consolidation in joint cases. The court of appeals reversed the decision of the bankruptcy court substantively consolidating joint chapter 7 cases in *Reider*. It adopted the analysis of substantive consolidation articulated in *Eastgroup Properties v. Southern Motel Ass'n, Ltd.*, 935 F.2d 245, 249 (11th Cir., 1991), with modifications to accommodate to the nature of joint spousal cases. *Reider*, 31 F.3d at 1108. It stated:

In assessing the propriety of substantive consolidation, a court must determine: (1) whether there is a substantial identity between the assets, liabilities, and handling of financial affairs between the debtor spouses; and (2) whether harm will result from permitting or denying consolidation.

*Id.* While there is no exhaustive list of factors,[22] *Reider* found that the assessment of the extent of substantial identity should include the extent of jointly held property and the amount of joint debt. If there is a determination of substantial identity, the court must analyze and balance the harm that would result from the failure to substantively consolidate the joint cases. The difficulties in disentangling the two estates should be considered. The debtors' bad faith or fraud should be considered as well as the prejudice to creditors for failure to substantively consolidate the two estates. Other creditors may seek to demonstrate that they would be harmed by substantive consolidation because they relied upon the separate credit and assets of one of the spouses. "Ultimately, the court must be persuaded that 'the creditors will suffer greater prejudice in the absence of consolidation than the debtors (and any objecting creditors) will suffer from its imposition.' " *Reider*, 31 F.3d at 1109 (quoting *Holywell Corp. v. Bank of New York*, 59 B.R. 340, 347 (S.D.Fla., 1986)). In applying this analysis in *Reider*, the court of appeals found that the two cases should not have been consolidated. The court noted that while the schedules filed by the debtors did not delineate who owned each asset listed, the true ownership could be readily ascertained as could whether each liability

---

21. Severance of the entireties estate may affect the distribution to creditors as substantive consolidation may. Both can only be effected by motion.

22. " 'Substantive consolidation cases are to a great degree *sui generis*.' 5 Collier on Bankruptcy, ¶ 1100.06, p. 1100–33 (15th Ed.1985). Thus precedents are of limited value." *Augie/Restivo*, 84 B.R. at 321.

was a joint or individual liability. *Reider,* 31 F.3d at 1109–10. The principal asset liquidated by the trustee was a parcel of land owned solely by Mrs. Reider, who had inherited it from her mother. *Id.* at 1103–04. While Mr. Reider had listed the land on his personal financial statement provided to the bank, this fact alone was not a sufficient basis for a finding of substantial identity.[23] There was no other evidence of any substantial commingling of assets prior to the filing of the joint petition. *Id.* at 1110. Turning to the harm inquiry, the court noted that the FDIC only had a claim against Mr. Reider and had never asserted a claim against Mrs. Reider. *Id.* The real property was sold by the trustee for $400,000. The FDIC's claim was $320,978.58. *Id.* at 1104. It is not clear from the opinion what other assets were available for distribution to creditors, the amount of creditors' claims and the distribution of claims between the two estates. The opinion suggests that consolidation would have resulted in a substantial benefit to the FDIC at the expense of Mrs. Reider's creditors. *Id.* at 1110.

The bankruptcy court's order of substantive consolidation in *Chan* was affirmed by the district court. In *Chan,* the debtors moved for substantive consolidation and a bank objected. In this chapter 11 case, the debtors scheduled Mr. Chan's individual assets with a value of $8,900; Mrs. Chan's, of $124,380; and jointly owned assets of $97,020. Mr. Chan had always been the primary wage earner, having earned approximately 77% of the family income in the five years preceding the commencement of the bankruptcy case. Mrs. Chan's principal asset was a $100,000 loan payable solely to her. However, the loan was made from money bor-

rowed by both spouses and secured by their jointly owned residence. Liabilities consisted of unsecured claims against Mr. Chan in excess of $1,000,000 and the bank's claim of $60,000, which was a joint debt. *Chan,* 113 B.R. at 428–29. If the cases were substantively consolidated, the bank would be prejudiced. It would be paid 36% of its claim as opposed to 100% if the cases were not consolidated. *Id.* at 429. This prejudice was not enough to prevent substantive consolidation. The court noted, by quoting *In re Snider Bros., Inc.,* 18 B.R. 230, 234 (Bankr.D.Mass., 1982):

> It must be recognized and affirmatively stated that substantive consolidation, in almost all instances, threatens to prejudice the rights of creditors....This is so because separate debtors will almost always have different ratios of assets to liabilities. Thus, the creditors of a debtor whose asset-to-liability ratio is higher than that of its affiliated debtor must lose to the extent that the asset-to-liability ratio of the merged estates will be lower.

*Chan,* 113 B.R. at 429. While such prejudice must be a consideration, it is not determinative.

In *Birch,* substantive consolidation was denied. In this case, the husband's estate had no assets while the wife's estate had assets of $50,000. The majority of the claims arose from Mr. Birch's sole proprietorship. Mrs. Birch's assets came from real estate she owned herself prior to the marriage and which was "clearly her separate property." *Birch,* 72 B.R. at 103–04. There was no intermingling of assets and the liabilities were clearly determinable. Substantive consolidation would have greatly benefitted Mr. Birch's creditors

---

**23.** The court noted, "Significantly, there is no evidence in the record that Mrs. Reider acquiesced in, or even knew of, the fact that Mr. Reider had listed the real estate on a financial statement." *Reider,* 31 F.3d at 1110.

and greatly prejudiced Mrs. Birch's creditors. *Id.* at 106. The court noted the argument that since all of the profits from Mr. Birch's business were deposited into the debtors' joint checking account and used for family purposes, Mrs. Birch benefitted from her husband's business. "The short answer to this contention in this case is that all of such family assets are exempt and would not result in any distribution to creditors regardless of consolidation." *Id.* at 107.

### Administration of Estates Before the Court

With the principles of substantive consolidation in mind, it is necessary to apply them to the cases before the court.

### The Thomas Case

■ All creditors will be paid in full if the Thomas' two bankruptcy estates are substantively consolidated or if the entireties tenancy is severed and the proceeds of sale are equally divided between the two estates. The trustee sought substantive consolidation, which is appropriate in this case. The trustee took Mrs. Thomas' deposition. Although Mr. Thomas' deposition was also requested, he did not attend due to illness. At the hearing on the trustee's objection to the debtors' claim of exemption and the trustee's motion to substantively consolidate the two estates, the parties relied upon Mrs. Thomas' deposition rather than oral testimony. F.R.Bankr.P. 7032 and 9014.

Mrs. Thomas was 63 years old when the case was commenced; Mr. Thomas, 67.

Mr. Thomas receives a monthly pension of $853.29 and a monthly Social Security annuity of $1,105.00. His total income in 1998 was $31,795 and in 1999, $25,179. The Statement of Financial Affairs reflects that Mrs. Thomas had no income in 1998 or 1999. She recently began receiving a monthly Social Security benefit of $500. The debtors' schedules reflect $24,070 in unsecured debt for Mr. Thomas and $56,226 in unsecured debt for Mrs. Thomas.[24]

The debtors maintained joint bank accounts their entire married life.[25] Mrs. Thomas is her husband's representative for Social Security purposes and controls the joint checking account.[26] All receipts have been deposited to the joint account and all bills have been paid from the joint account without regard to whether the bills were individual bills of either spouse or were joint obligations. During the course of their marriage, they made no distinction between their respective individual incomes or obligations. Mrs. Thomas testified that, "Our money has always been our money." When she paid bills from the joint account, "Sometimes they were his, and sometimes they were mine, and I really didn't differentiate between the two." They did not maintain separate financial records. Mrs. Thomas worked until 1993. All bills were paid from the joint account even though after 1993 she was not contributing funds to the joint account. She listed her husband's income on some of her credit card applications. All the scheduled unsecured debts appear

---

24. The bar date for filing proofs of claims has not yet expired.

25. One joint checking account is identified on Schedule B. Question 11 of the Statement of Financial Affairs states that no accounts were closed within the 12–month period prior to filing the petition.

26. Mr. Thomas' social security checks were deposited into a separate checking account until 1999 when they were deposited into the joint checking account. Mrs. Thomas controlled her husband's separate account and wrote checks on it.

to be credit card or department store obligations.

The sole asset available for creditors is the jointly owned home. The debtors estimate its value at $227,000, subject to a lien of $7,600.

In this case, there is a substantial identity between the two estates. There was substantial, almost total, commingling of assets and liabilities. While it is true that all of the credit card obligations are in either the husband's name or the wife's name, they appear to have been used for routine household expenses that benefitted both spouses and to have been paid from the joint checking account, without regard to the identity of the individual obligor. The sole joint asset, the house, was purchased from funds deposited into the joint checking account. It is particularly noteworthy that during at least the two years prior to the filing of the petition, both spouses apparently continued to use the various credit cards even though only Mr. Thomas had any income. At this late date, it would be virtually impossible to determine the true individual obligations of the debtors because of the manner in which they maintained and used their accounts.[27]

There is nothing improper with the manner in which the debtors maintained their accounts and personal finances. They viewed themselves and treated themselves as a single financial entity. Their principal asset, their home, is held as tenants by the entireties, a tenancy based on the same idea, that husband and wife are a single entity. In balancing the harm to the various creditors and to the debtors, the court can find no harm to the creditors in substantive consolidation. If the cases are not consolidated (or the entireties estate severed), the creditors would be greatly prejudiced. They would be paid nothing. The debtors lived their married life as a single financial entity and are not harmed in now treating their principal asset in the same manner.

### *The Bunker Case*

The chapter 7 trustee has not made a motion to substantively consolidate the two bankruptcy estates or to sever the entireties estate in the Bunker case. While the estates have been administratively consolidated pursuant to Local Bankruptcy Rule 1015–1,[28] they remain two separate and distinct estates. The only matter before the court at this time is the objection to the claim of exemption. The question of administration—substantive consolidation or severance—must await the trustee's motion.

### *The Prather Case*

■■■ A confirmation hearing was held on the debtors' plan. Mr. Prather testified that their financial problems originated from his unsuccessful business venture related to a gas pipeline, that much of the credit card debt in his sole name was incurred for the business venture and that the remaining credit card debt, whether in his sole name or in the debtors' joint names, was used for usual household and living expenses. The family maintained a

---

**27.** While it is possible to determine to whom each credit card was issued, at least some were issued based on the earnings of both spouses. It is, however, impossible to determine who benefitted from each credit card. It is impossible to determine who bought what with each account, but more importantly, because they were paid from a joint account, it is impossible to determine whose income was used for their payment.

**28.** L.B.R. 1015–1 provides that when a joint petition is filed, the cases will be administratively consolidated unless an objection is filed within 10 days after the first meeting of creditors. No objection was made.

joint checking account into which Mr. Prather's income was deposited. He was the sole source of income for the family. Their present home was purchased in 1973. The down payment came from the joint account. The funds in the joint account at that time came from Mr. Prather's consulting practice. Payments on the mortgage over the years derived from Mr. Prather's income.

Mrs. Prather is a party to the state court accounting suit. It began as an interpleader action commenced by First Virginia Bank when the ownership of the funds in an account in the debtors' joint names was contested. All the funds in the account were proceeds from Mr. Prather's gas pipeline venture. Nonetheless, counsel for the Prathers in the state court action is proposed to be treated as a joint creditor and be paid from the proceeds from the sale of the house if the proceeds from the state court accounting suit are insufficient to pay him.[29]

No Class 5 creditor (joint claims) voted. American Express and two affiliates cast the only Class 6 (individual claims against Mr. Prather) votes. Those votes were in favor of the plan. At the confirmation hearing. Mr. Prather testified that the Class 5 claims actually totaled $24,000 and that he expected net proceeds from the sale of the house of $44,000. The Class 6 claims totaled about $65,000 and he expected net proceeds from the accounting suit of about $40,000. He expected to retain the surplus $20,000 from the sale of the house.

■ The Prathers are debtors-in-possession and have all the powers and duties of a trustee. 11 U.S.C. § 1107(a). They also have all of the responsibilities of a trustee. They have not filed a motion seeking substantive consolidation. Section 1129 sets forth the requirements for confirmation. While there was no objection to confirmation, the court is under an independent duty to assure that the confirmation requirements have been satisfied. *Tenn–Fla Partners v. First Union Nat'l Bank of Fla.,* 229 B.R. 720, 734–35 (W.D.Tenn., 1999); *In re T–H New Orleans Ltd. Partnership,* 188 B.R. 799, 805 (E.D.La., 1995); *In re Michelson,* 141 B.R. 715, 720 (Bankr.E.D.Cal., 1992). The two requirements in issue are whether the plan has been proposed in good faith and whether the liquidation test has been satisfied. 11 U.S.C. § 1129(a)(3) and (7).

The liquidation test has not been met. If the Prather case were a case under chapter 7, the chapter 7 trustee would have sought substantive consolidation. The factors are similar to those in Thomas. Mr. Prather was the sole income producing spouse for most of the marriage, and certainly during the period when the assets that would be administered were accumulated and the debts to be paid were incurred. The state court accounting suit purports to be a joint asset, but, in fact, is Mr. Prather's asset. Mrs. Prather is a nominal party to the state court proceeding because the bank account in issue was in the name of both spouses. However, all the money in the account came from Mr. Prather and his investment in and efforts in the gas pipeline. In actuality, the account, although titled in their joint names, really is Mr. Prather's sole asset. The chapter 11 plan seeks to pay the attorney handling the state court case from the recovery and if the recovery is insufficient, as a joint creditor on the theory that he is

29. The debtors propose to treat counsel in the state court suit as a secured creditor to the extent of the recovery in the case. In the event that the recovery does not pay his fees in full, he is treated as a joint unsecured creditor.

representing both debtors as to a joint fund.

It is clear that no funds would be returned to the debtors in a chapter 7 proceeding as is proposed by the chapter 11 plan before the court. If this were a case under chapter 7, the unsecured creditors would receive more than they are to receive under the proposed chapter 11 plan. 11 U.S.C. § 1129(a)(7)(A)(ii). Although Class 6 accepted the plan by the votes of the three members who did vote, not all members of the class voted. Section 1129(a)(7) must be satisfied as to each member of the class. Acceptance by a class does not eliminate the requirement as to the non-voting members of the class. Additionally, recourse to § 1129(b) as to non-accepting classes is not available because the failure to satisfy § 1129(a)(7) does not satisfy the prerequisite that all requirements of § 1129(a), other than § 1129(a)(8), be satisfied.

In light of the failure to satisfy the liquidation test contained in § 1129(a)(7), it is unnecessary to determine whether the failure of the debtors-in-possession to seek substantive consolidation where the failure to do so inures to the debtors' benefit is a violation of the good faith requirement of § 1129(a)(3).

### CONCLUSION

The objections to Mr. and Mrs. Thomas' and Mr. Bunker's claim of exemption based on the tenancy by the entireties estate will be sustained. Ms. Bonanno did not claim the tenancy by the entireties exemption. Mr. and Mrs. Prather, as debtors-in-possession, did not claim their tenancy by the entireties exemption. None of the real estate is exempt under 11 U.S.C. § 522(b)(2)(B) as tenants by the entireties. The trustee's motion to substantively consolidate the Thomas' estates will be granted. The Prathers' chapter 11

plan cannot be confirmed in its present form.